## STOUT *v.* MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY *et al.; et vice versa.*

Nos. 11333, 11359. DECEMBER 4, 1936. REHEARING DENIED DECEMBER 15, 1936.

*Harold Hirsch, Marion Smith, John P. Stewart, Welborn B. Cody,* and *J. K. Jordan,* for plaintiff.

*Brandon, Hynds & Tindall, John F. Handy, J. Walter Mason,* and *Albert E. Mayer,* contra.

HUTCHESON, Justice. Mrs. Dorothy Gatins Stout, daughter of Benjamin K. Gatins and granddaughter of Joseph F. Gatins Sr., brought her petition against Joseph F. Gatins Sr., the Massachusetts Mutual Life Insurance Company, and Howell E. Jackson, Benjamin K. Gatins, and Mary G. Jackson as trustees under a deed of trust executed by Joseph F. Gatins Sr. This deed is as follows:

"Georgia, Fulton County. This indenture made and entered into this the 14th day of February in the year of our Lord nineteen hundred and twelve (1912), by and between Joseph F. Gatins, of the State of New York and County of New York, of the

first part, and Trust Company of Georgia, as trustee, a corporation of the State of Georgia, and County of Fulton, party of the second part, witnesseth: that said party of the first part, for and in consideration of the sum of ten ($10.00) dollars cash in hand paid by said party of the second part to the said party of the first part, at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, and for the trusts hereby undertaken by said party of the second part, hereinafter named, has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell, and convey unto the said party of the second part, its successors and assigns, as such trustee, subject, however, to the life-estate of the party of the first part, which is hereby retained therein" (describing certain real estate known as the Georgian Terrace Hotel in Atlanta, Georgia). "The party of the first part hereby expressly reserves to himself an estate for and during the time of his natural life in and to said property and every part thereof, and this conveyance is intended to embrace only the remainder interest in and to said property after the death of the party of the first part. To have and to hold the said bargained premises, together with all and singular the rights, members, and appurtenances thereof, to the same being, belonging, or in any wise appertaining, subject to the said life-estate of the said Joseph F. Gatins above reserved, to the only proper use, benefit, and behoof of the said party of the second part, its successors and assigns, in fee simple, forever, but only as trustee as herein specified and provided, and upon the trusts hereinafter named." Then follows the warranty clause.

"This conveyance of said property is made to said party of the second part as trustee upon the following trusts, to wit: (1) Said trustee shall in no wise interfere with the free enjoyment of said property and its rents, issues and profits, and of the life-estate herein reserved by the said Joseph F. Gatins for and during his natural life. (2) The party of the second part, after the termination of the said life-estate, shall hold, manage, control, lease, rent, and collect the incomes, issues, and profits from said property, including all rents and notes for rents reserved or taken by said party of the first part in his lifetime, carrying out all leases which said party of the first part may have made which have not expired at the time of said first party's death, and out of the pro-

ceeds thereof shall pay all taxes, assessments, public charges, and do all necessary and proper repairs and improvements, and shall keep up and maintain the said property for and during the natural lives of the three (3) children of the party of the first part, to wit: his sons Joseph F. Gatins Jr., Benjamin K. Gatins, and his daughter Mary L., and dispose of the net surplus arising therefrom, as hereinafter provided. Said trustee is to have full power and authority in and about the said matters, and shall have all the rights, powers, and authority over said property, except as to the sale thereof, as if it owned the same free of trusts, for and during the lives of each of said three (3) children, and of the final survivor of them. (3) After the death of the said party of the first part, the said trustee is authorized, and in its discretion, to pay over to each of said three (3) children an undivided one-third (1/3) of the net incomes from said property, during the life of such children, but shall not be compelled to do so, nor shall such income, or any part thereof, be subject to or liable for the debts, obligations, or undertakings of any of said children, it being the purpose of said party of the first part to leave the matter entirely discretionary with the trustee; so that the said income, or any part thereof, cannot be subject to any debt or liability of any of said children. In case of the death of either of said children, leaving children or descendants of children, then the said trustee or its successors will have the same right, and be under the same duty as to such child or descendants of children, as existed to said deceased child. Should any of said three children die without leaving children or descendants of children, then the said trustee is authorized, in its discretion, to turn over one half (½) of the said net income to each of the two survivors; should two of said children die without leaving any children or descendants of children, then said trustee is authorized, in its discretion, to turn over the entire net income to the survivor of said children of said party of the first part. (4) In no event is the said trustee or its successors to be compelled or required to turn over any part of the net income to any child or descendants of children; nor shall the same in any wise be liable for the debts of any or either of them. (5) Said trustee shall keep a correct account of the incomes, issues, and profits of said property and of the expenses and upkeep thereof, and any surplus income not turned over as hereinbefore provided

shall be invested and an account thereof kept, and said investment shall at all times and in all respects remain as surplus income and be subject to the authority of said trustee or its successors, as though no such investment had ever been made thereof. (6) Upon the death of the survivor of my said three children, the said trustee, or its successors, will convey the said property in fee simple, unconditionally, including any surplus income, or the investment thereof held by it, to the children or descendants of children of said three named children of said party of the first part, one third to the children or descendants of children of each, it being the intention of this indenture that they take this remainder interest hereby created in them, per stirpes. If any of said named children, however, die without leaving at the time of his or her death any children or descendants of children, or if there be none living at the time of the death of said survivor, then the part of such child so dying without leaving such children or descendants of children, or if there be none living at the time of the death of said survivor, shall go and be conveyed by the trustee to the children or descendants of children of the other two; and if two of said named children should die without leaving any children or descendants of children surviving, as aforesaid, then the entire estate shall go to and be conveyed by the trustee to the children or the descendants of children of the remaining named child who dies leaving children or descendants of children. (7) If all of said named children should die without leaving any children or descendants of children surviving as aforesaid, then the said trustee or its successors will convey the said property in fee simple to the next of kin of said party of the first part, according to the laws of Georgia. (8) The said trustee and its successors shall keep a full account of their acts and doings, and make annual reports to the ordinary of Fulton County, as provided by law, and shall receive as compensation an annual fee of twelve hundred ($1200) dollars, payable monthly, which shall be in lieu of all other compensation. (9) At any time during the life of the party of the first part the said property may be sold and conveyed (at public or private sale, without any order of court), in fee simple, by the joint deed of the trustee or its successors, and the party of the first part, the proceeds to be invested by the joint action of both of them, under similar trusts, terms, and conditions as provided in this instru-

ment, without any order of court, and in any property selected by said trustee and said party of the first part. (10) After the death of the party of the first part, the said trustee or its successors shall have power to make sales of said trust estate, or to mortgage or encumber, or to change the said investment thereof, or any part thereof, only by first obtaining an order in terms of the law, from one of the judges of the superior court of Fulton County, Georgia; but if any such sale, encumbrance, or change in investment is ordered, it may be done either by public or private sale, as the court may direct; and also the reinvestment shall be made upon the same terms, trusts, and conditions as herein provided. (11) In case of the resignation of said trustee, or its becoming disqualified or incapacitated, or any vacancy occurring in said trusteeship, for any reason, the same shall be filled by me, if living, by an instrument executed under my hand; or if I be dead or refuse to act, then by order of the superior court of Fulton County, Georgia, as provided by law for filling vacancies in trusteeships. (12) The purpose and object of said party of the first part in making this conveyance is to provide for the beneficiaries herein named, during the continuance of this trust, by investing said trustee and its successors with the same power, authority, discretion, and judgment as to the management, control, and disposition of said property, and the wisdom and desirability of turning over any of said income to them, as the said party of the first part has during his life possessed; and so as to protect the said estate from any improvidence, wastefulness, or lack of business ability on the part of any or all of the said beneficiaries; and it is the express purpose of said party of the first part that said remainder interest shall remain equitable and subject to all these trusts until the last survivor of said three children named is dead, and the said trustee or its successors has at said time conveyed said property to the beneficiaries free from all trusts, by which deed of conveyance alone the legal title to the trust estate is to be thereby vested in said beneficiaries and said trusts are to be terminated and the remainders are to become a legal estate as hereinbefore provided."

The petitioner is seeking to have canceled certain security deeds executed by Joseph F. Gatins Sr., and by the trustee and successor trustees under the deed of trust, and to enjoin a threatened sale thereunder. These security deeds totaling $125,000 were executed

pursuant to orders of the superior court of Fulton County, upon petition of the particular trustees in office at the time. One security deed of $50,000 was executed by the original trustee, another of $50,000 was executed by Adair Realty and Trust Company, successor trustee, a third of $25,000 was executed by the present trustees. The first two deeds, which conveyed the property to New England Mutual Life Insurance Company, were transferred to Massachusetts Mutual Life Insurance Company, one of the defendants; and the third deed conveyed the property to Massachusetts Mutual Life Insurance Company. The petitioner contends that under the terms of the deed of trust no legal title to the remainder interest was vested in the trustee, but that she took a legal vested remainder; and that the court of equity had no jurisdiction to order a sale of a legal estate. She also attacks the validity of the orders of court authorizing and confirming the conveyances, upon various grounds which it is not now necessary to state. The prayers are for receiver, cancellation of the security deeds, that the threatened foreclosure thereunder be enjoined, and that the trustees be enjoined from executing any further mortgages on the property. The Massachusetts Mutual Life Insurance Company filed general and special demurrers. The general demurrers and some of the special demurrers were sustained. Others were overruled, and others were not expressly passed on. The petitioner excepted, and the defendant filed a cross-bill of exceptions. Joseph F. Gatins Sr., is still in life, and so is his son Benjamin K. Gatins, father of the petitioner.

■ Under the issues made by the demurrers to the petition, the first question presented for determination is whether the remainders to the grandchildren of the grantor (petitioner being one of these), provided for in the trust deed, were contingent or vested remainders. "Remainders are either vested or contingent. A vested remainder is one limited to a certain person at a certain time, or upon the happening of a necessary event. A contingent remainder is one limited to an uncertain person, or upon an event which may or may not happen." Code, § 85-703. For other definitions of vested and contingent remainders, see *Griswold* v. *Greer*, 18 *Ga.* 545; *Burch* v. *Burch*, 23 *Ga.* 536, 548; *Allen* v. *Whitaker*, 34 *Ga.* 6; *Cogburn* v. *Ogleby*, 18 *Ga.* 56; *Bowman* v. *Long*, 23 *Ga.* 242; *Lumpkin* v. *Patterson*, 170 *Ga.* 94 (152 S. E. 448). An

examination of items 6 and 7 of the trust deed discloses that at the time the deed was executed it was uncertain who the remaindermen would be; nor was it possible to ascertain who they would be until the death of the surviving life-tenant. The language used in item 6 of the deed shows an intent to provide for the grandchildren of the grantor, the existence and ascertainment of whom could not be determined until the arrival of the time for distribution of the estate in remainder at the death of the surviving life-tenant. Until that time it could not be determined whether the petitioner would be in life or whether she would have children. This would produce a contingency as to the person who would take in remainder the portions of the estate granted for life to the father of petitioner; and consequently the estate which the petitioner might derive under the deed of trust would be contingent. This construction is further emphasized by the fact that in item 12 of the deed the grantor provided that no legal title should vest in the remaindermen until conveyance be made of the trust property to the beneficiaries free from all trusts, "by which said conveyance alone the legal title to the trust estate is to be thereby vested in said beneficiaries," and that "said remainder interest shall remain equitable and subject to all these trusts" until the last survivor of the life-tenants be dead and deeds made. See *Cogburn* v. *Ogleby*, supra. The case of *Gillespie* v. *Ellis*, 168 *Ga.* 790 (149 S. E. 221), is distinguishable from the case at bar in this particular, if not in others. In *Bull* v. *Walker*, 71 *Ga.* 195, the trust was specifically restricted to the life-tenant, and there was no contingency upon the children taking after the death of the life-tenant. In *Morehead* v. *Allen*, 131 *Ga.* 807, 816 (63 S. E. 507), no trust was involved, as was specifically pointed out by the court. The same is true of the case of *Taylor* v. *Kemp*, 86 *Ga.* 181 (12 S. E. 296).

From what has been said above, and in view of the plain language of the deed of trust, we do not deem it necessary to elaborate on the principles involved and the decisions discussing them, but are content to cite the following, which amply sustain the conclusion we have reached: *Sharman* v. *Jackson*, 30 *Ga.* 224; *Taylor* v. *Meador*, 66 *Ga.* 230; *City Council of Augusta* v. *Radcliffe*, 66 *Ga.* 469; *White* v. *Rowland*, 67 *Ga.* 546 (44 Am. R. 731); *Darnell* v. *Barton*, 75 *Ga.* 377; *Watson* v. *Adams*, 103 *Ga.* 733 (30 S.

E. 577) ; *Cushman* v. *Coleman,* 92 *Ga.* 772 (19 S. E. 46) ; *Smith* v. *Smith,* 130 *Ga.* 532 (61 S. E. 114, 124 Am. St. R. 177) ; *Lane* v. *Patterson,* 138 *Ga.* 710 (76 S. E. 47) ; *Jones* v. *Rountree,* 138 *Ga.* 757 (76 S. E. 55) ; *Murphy* v. *Murphy,* 151 *Ga.* 438 (107 S. E. 37) ; *Harris* v. *McDonald,* 152 *Ga.* 18 (108 S. E. 448) ; *Burton* v. *Patton,* 162 *Ga.* 610 (134 S. E. 603) ; *Dismukes* v. *Bagley,* 165 *Ga.* 665 (141 S. E. 902).

■ The next question to be determined is whether the estate granted to the remaindermen after the life-estates granted to the children of the grantor are legal or equitable estates. "Trusts are either executed or executory. In the former, everything has been done by the trustee required to secure the property or to render certain the interest of the beneficiaries, and all that remains for him to do is to preserve the property and execute the beneficial purposes. In executory trusts, something remains to be done by the trustee, either to secure the property, to ascertain the objects of the trust, or to distribute according to a specified mode, or some other act the doing of which requires him to retain the legal estate." Code, § 108-111. The grantor, in consideration of $10 and "for the trusts hereby undertaken by" the trustee, conveyed the trust property to the trustee, its successors and assigns, subject to a life-estate retained therein by the grantor, "in fee simple forever, but only as trustee as herein specified and provided, and upon the *trusts* [italics ours] hereinafter named." After the warranty clause appear the words: "This conveyance . . is made to said . . trustee upon the following *trusts:*" (italics ours). In item 2, after providing for the control and management of the trust property after the death of the grantor and during the lives of his three named children, and for disposition of the net income as provided in subsequent items of the deed, it is provided that the trustee is to have full power and authority in and about the matters, and shall have all the rights, powers, and authority over said property, except as to the sale thereof, as if it owned the same free of trusts, for and during the lives of the three children of the grantor, and of the final survivor of them. Provision is made for the payment of the net income after the death of the grantor, to the three children of the grantor or their children or descendants of children, or to the survivors or survivor of his children in the event of death of the other or others without chil-

dren or descendants of children; but the trustee is not compelled to do so. It may invest such income, and it shall "be subject to the authority of the trustee or its successors as though no such investment had ever been made thereof." After stating the purposes of the trust in item 12, the deed declares: "it is the express purpose of said party of the first part that said remainder interest shall remain equitable and subject to all these trusts until the last survivor of said ·three children named is dead, and the said trustee or its successors has at said time conveyed said property to the beneficiaries free from all trusts, by which deed of conveyance alone the legal title to the trust estate is to be thereby vested in said beneficiaries and said trusts are to be terminated and the remainders are to become a legal estate as hereinbefore provided."

Under these provisions and those of items 6 and 7, providing for the contingent remainders, we see no conclusion to be reached other than that the trustee and its successors were trustees for both the life-tenants in remainder and the contingent remaindermen who were to take upon the ceasing of the precedent estate of the surviving life-tenant. Until then it was necessary that the trustee keep intact the estate granted, to preserve it for the contingent remaindermen, and to divide it among them by the execution of proper deeds when it was ascertained who they were. Until that time arrived the trust remained executory, and the remainders were equitable and not legal estates. Certainly these acts and duties of the trustee were those which it could not forego, and which it could not do if it did not have the legal title. Even if in view of other items of the deed it were doubtful as to whether the estates created were legal or equitable, the provision of item 12 quoted above would clearly show that the intention of the grantor was that the trust should embrace the whole estate, and not merely the life-estate of his three named children. For cases involving similar trust deeds, which are ample authority for the ruling here made, see *Thomas* v. *Crawford,* 57 *Ga.* 211; *Schley* v. *Brown,* 70 *Ga.* 64; *Cushman* v. *Coleman,* supra; *Ford* v. *Cook,* 73 *Ga.* 215; *Riggins* v. *Adair,* 105 *Ga.* 727 (31 S. E. 743); *McLain* v. *Rabon,* 142 *Ga.* 163 (82 S. E. 544); *Gunby* v. *Alverson,* 146 *Ga.* 536 (91 S. E. 556); *Woodbery* v. *Atlas Realty Co.,* 148 *Ga.* 712 (98 S. E. 472); *Jones* v. *Rountree,* supra; *Watts* v. *Boothe,* 148 *Ga.* 376 (96 S. E. 863); *Cunningham* v. *Calhoun,* 135 *Ga.* 715 (70 S. E. 574);

*Burton* v. *Patlon,* supra; *Murphy* v. *Murphy,* supra; *Macy* v. *Hays,* 163 *Ga.* 478 (136 S. E. 517); *Phinizy* v. *Weatherly,* 164 *Ga.* 71 (137 S. E. 782); *Duncan* v. *Verner,* 172 *Ga.* 553 (158 S. E. 322). Nothing herein ruled is in conflict with the ruling in *Fleming* v. *Hughes,* 99 *Ga.* 444 (27 S. E. 791) (criticised and distinguished in *Woodbery* v. *Atlas Realty Co.,* supra, and *Gunby* v. *Alverson,* supra), or to *Bull* v. *Walker,* supra (distinguished in *Woodbery* v. *Atlas Realty Co.,* supra). The decisions in *Overstreet* v. *Sullivan,* 113 *Ga.* 681 (39 S. E. 431), *Smith* v. *McWhorter,* 123 *Ga.* 287 (51 S. E. 474, 107 Am. St. R. 85), and *Seaboard Air-Line Ry.* v. *Simmerville,* 142 *Ga.* 317 (82 S. E. 290), all based largely on the ruling in *Fleming* v. *Hughes,* were expressly overruled in *Watts* v. *Boothe,* supra.

■  Having determined that the interest of the petitioner is only contingent and equitable, is she a proper party plaintiff to a suit seeking cancellation of the deeds to secure debt, executed by the grantor of the deed of trust (the present life-tenant) and the trustees as such, purporting to convey the entire trust estate? In *LaPierre* v. *Martin,* 145 *Ga.* 851 (89 S. E. 1074), it was held that "Remaindermen, whose estate is vested subject to divestiture upon their death before the life-tenant, can not, during the existence of the precedent life-estate, maintain a suit to cancel a deed executed by the life-tenant individually and also as their trustee, purporting to convey the estate in solido." An examination of the record in that case discloses that the remaindermen were seeking cancellation of the conveyances executed by the life-tenant and trustee only in so far as it affected the remainder interest of the trust estate. Such is the relief sought in the case at bar. Under these circumstances that decision is controlling on the case at bar; and the petitioner, having only a contingent remainder, can not be granted the relief sought as to cancellation of the security deeds.

■  The petitioner is also seeking, on the same grounds, to enjoin a threatened foreclosure of the security deeds. As a general rule, where the legal title is in a trustee, such trustee is the proper person to maintain or defend actions involving the trust estate. *Ford* v. *Cook,* supra, *Wagnon* v. *Pease,* 104 *Ga.* 417 (30 S. E. 895), citing *Clark* v. *Flannery,* 99 *Ga.* 239 (25 S. E. 312); *Woodbery* v. *Atlas Realty Co.,* supra. An exception to this rule is where the trustee refuses to act. *Colesbury* v. *Dart,* 59 *Ga.* 839.

In *Wagnon* v. *Pease,* supra, this court held that a trustee may attack an order of court authorizing the creation of a mortgage, on the ground that service of the proceedings upon which the order was based was not made upon the beneficiaries; and expressly overruled the decision in *Rutherford.*v. *Larned,* 102 *Ga.* 50 (28 S. E. 1019), in so far as it stated a contrary doctrine. While in such instances, if the trustee were estopped from contesting the validity of the orders or the mortgage, there might be equitable ground for allowing suit by the beneficiaries of the trust to enjoin a sale under the mortgages in order to protect their interest in the trust estate, such rule would have no application under the ruling in *Wagnon* v. *Pease,* supra. Inasmuch as there is no allegation that the trustees refused to act or will fail to act to protect the interest of the remaindermen under the deed of trust here involved, the petition fails to show any right in petitioner, as such remainderman, to maintain the present proceeding, in so far as the relief prayed for against the Massachusetts Mutual Life Insurance Company is concerned. See *Lester* v. *Stephens,* 113 *Ga.* 495 (3) (39 S. E. 109); *McLarty* v. *Abercrombie,* 168 *Ga.* 742, 745 (149 S. E. 30). For these reasons we are of the opinion that the court did not err in sustaining the general demurrer of the Massachusetts Mutual Life Insurance Company. No ruling is here made upon the validity of the court order authorizing or confirming the execution of the security deeds by the respective trustees, or of petitioner's rights against the other parties defendant; or upon the overruling or sustaining of the special demurrers. Our ruling is based solely on the grounds that the petitioner is not a proper party plaintiff to maintain this action for the relief prayed for against the Massachusetts Mutual Life Insurance Company.

*Judgment affirmed. Cross-bill of exceptions dismissed. All the Justices concur.*